UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEPHEN SIMON,

                              Petitioner,

                    v.

MARK BRADT, Superintendent,

                              Respondent.

---

**Hon. Hugh B. Scott**

**12CV628**

**(CONSENT)**

**Decision
&
Order**

 

 

Pro se petitioner has filed an application to this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction.   He asserts the following grounds in support of his Petition:   actual innocence, ineffective assistance of trial and appellate counsel, judicial bias, other trial errors.   The parties consented to proceed before the undersigned as Magistrate Judge (pursuant to 28 U.S.C. § 636(c)) on April 5, 2013 (Docket No. 9).

After granting respondent's motion (Docket No. 4) for extension of time to answer (Docket No. 5), respondent answered and filed his Memorandum on September 28, 2012 (Docket Nos. 6, 7).   Petitioner, proceeding at this point pro se, filed his Traverse (Docket No. 8).   Petitioner then filed a letter indicating that he had obtained counsel (Docket No. 10); as a result, a deadline was set for counsel to file formal notice of appearance (Docket No. 11), which petitioner's counsel did (Docket Nos. 12 (David Seeger's appearance), 13 (Leigh Anderson's appearance)).   With the appearance of petitioner's counsel, petitioner was granted until November 5, 2013 (Docket

No. 14), and then to March 5, 2014, to file supplemental papers.   No additional papers were filed

and the Petition thus was deemed submitted on the record before this Court.

## BACKGROUND

*Offense and State Court Proceedings*

This proceeding arises from the shooting and murder of Ziad Nasser inside his delicatessen

in 115 Englewood, Buffalo, New York, on August 29, 2006 (Docket No. 7, Resp't Memo. at 4, 8;

Trial Tr. 667-70, 672, 679).   A neighbor, Edward Brydalski, observed two men enter the

delicatessen, with their faces obscured by doo rags (Trial Tr. 719-30).   Brydalski started to dial

911 when he heard a popping sound inside the deli and then saw the two men run out of the store

(id.; Docket No. 7, Resp't Memo. at 4-5).   Brydalski then entered the deli and say Nasser lying on

his stomach bleeding (Trial Tr. 730-32).   Brydalski called the police and gave descriptions of the

two men and the direction they left the deli (Trial Tr. 732-33).

Detectives learned that the two suspects for this shooting were nicknamed "Wes" and

"Luck" (id. at 674).   "Wes" was later identified as Wesley Kirkland (id.).   On May 15, 2007,

Kirkland had a meeting with his probation officer when he was arrested (id. at 674-75).   Kirkland

then made statements to the police implicating petitioner, "Luck" (id. at 671-77, 796-98; Docket

No. 7, Resp't Memo. at 7).   Kirkland entered a guilty plea on January 7, 2008, in a severed

proceeding from petitioner's case.   Kirkland implicated petitioner in the murder and attempted

robbery.

Petitioner was arrested and questioned by the Buffalo Police Department.   He initially

denied the murder and robbery allegations.   Then, he was shown Kirkland's statement and

petitioner then said what happened, that he came to the 115 Englewood deli with Kirkland to rob it.

Petitioner stated that Kirkland had the gun and petitioner heard the gun go off.   (Docket No. 7, Res'pt Memo. at 8-9.)

Petitioner and Kirkland's genetic material were found on the shotgun used in this offense (id. at 9; Trial Tr. at 1146-47).

Petitioner testified (Trial Tr. at 1227-1328) that he was at his girlfriend's home on August 29, 2006, the day of the murder (id. at 1228-29).   Kirkland then came to that house and said that he had a robbery he wanted to commit ("he had a lick that he wanted to go hit," id. at 1229) but petitioner's girlfriend would not let petitioner go; Kirkland then left disappointed but he borrowed petitioner's car keys (id. at 1229-30).   He testified that he left at nine or ten that night (id. at 1230).   Petitioner saw his loaned car on the news discussing the homicide, although no suspects were identified in that story (id. at 1231).   After petitioner's arrest on May 15, 2007, he told detective that he knew nothing about the homicide, but in fact petitioner knew that Kirkland and Kirkland's cousin took bikes and left the car in a field (id. at 1236).   The police did not believe petitioner's denials and told him that they found his DNA on the firearm, that they recovered the shotgun, and had an informant, then showing petitioner Kirkland's statement (id. at 1237).   Petitioner testified that Detective Lonergan told him that if he identified Kirkland as the shooter "we'll let you go home," so to go "along with the program" petitioner told the detective that he was with Kirkland but that Kirkland shot the deli clerk (id. at 1237-38, 1275-76, 1278-79, 1295).   Petitioner then discussed his statement to the police, pointing out false aspects of this statement (id. at 1244-53).   Petitioner testified that, months later, Kirkland told him that he and Glenn went into the deli, but did not mention the shooting (id. at 1253).   On cross-examination, petitioner denies telling about Kirkland and Glenn to the Grand Jury (id. at 1304).

Petitioner was convicted of second degree murder and attempted robbery in the first degree following a jury trial in Erie County Court.   Petitioner was sentenced to 25 years to life.

Petitioner moved to vacate the judgment, pursuant to Criminal Procedure Law § 440.10, submitting an affidavit from Kirkland in which Kirkland recanted his testimony surrounding his plea and exonerating petitioner.   Petitioner argues that this affidavit (and affidavits of others who heard Kirkland state that petitioner was not involved) was newly discovered evidence of his innocence.   (See No. 1, Ex., Order of Erie County Court, Mar. 17, 2009, at 2-3.)   The County Court rejected this new evidence on state law grounds (id. at 3).

*Appeal*

Petitioner appealed his conviction, People v. Simon, 71 A.D.3d 1574, 897 N.Y.S.2d 578 (4th Dep't 2010), arguing that he received ineffective assistance of trial counsel, suffered from judicial bias, received a harsh and excessive sentence, that his confession was coerced, and that his Sixth Amendment confrontation rights were disregarded.   He also challenged the weight and sufficiency of evidence against him and asserts newly discovered evidence and trial errors should have been found to upset his conviction.   Petitioner was represented by appellate counsel and also filed papers pro se.   The judgment of conviction was upheld, id.   Leave to appeal to the New York Court of Appeals was denied, People v. "Luck", 2010 N.Y. LEXIS 3499 (June 18, 2010), reconsideration denied, 909 N.Y.S.2d 30 (Sept. 1, 2010) (Docket No. 1, Pet'r, Ex.).

4

*Habeas Petition*

Petitioner then filed this Petition on July 3, 2012 (Docket No. 1, Pet.).   In this Petition, petitioner raises several constitutional claims.   He asserts his actual innocence (id. ¶ 18).   He argues that he received ineffective assistance of trial counsel (Kevin Spitler) for not calling exculpatory witnesses (in particular, Kirkland, and an Erie County Holding Center inmate, Dominique Wielbon, who would have testified that he heard from Kirkland that defendant did not participate in the crime) and for not objecting to prosecutorial misconduct to preserve the issue on appeal (id. ¶ 12(a)).   Trial counsel did not interview Wielbon, arguing that, as a matter of trial strategy, the attorney refused to do this to preserve petitioner's Sixth Amendment Confrontation Clause argument regarding Kirkland's statement (id. ¶ 12(b)).   Petitioner also argues that trial counsel failed to preserve issues for appellate review (id.).   Petitioner concludes that the cumulative impact of these errors created prejudice to him (Docket No. 8, Pet'r Memo. of Law at second unnumbered page).

He objects to sentencing counsel (John Jordan) taking an adversarial stance to petitioner's ineffective assistance of trial counsel arguments (Docket No. 1, Pet. ¶ 12(c)).   He also faults appellate counsel (Kevin Bauer) for failing to raise a Confrontation Clause issue, failing to argue petitioner's actual innocence, and failing to point out juror misconduct arguments on appeal (id. ¶ 13).   Petitioner again contends judicial bias from statements made in severed codefendant's trial accusing petitioner of being the shooter (id. ¶ 14).   He also argues that his sentence was the product of bias.   Petitioner contends that exculpatory affidavits were misapplied and his confession was coerced (his statement was made with implied promise of no prosecution) (id. ¶ 15, Exs. A-E).   He complains that his confession was coerced because it was implied promise of

5

non-prosecution when he made his statement (id. ¶ 16).   He points to various trial errors (evidence not being legally sufficient, a missing witness charge was not given) as well as instances of prosecutorial misconduct (such as improper cross-examination of alibi witness, making an inflammatory opening statement, and attempt to suppress exculpatory evidence).   Petitioner also complains that photographs of the crime scene and the victim's gunshot wound were admitted into evidence despite lacking any probative value.   Finally, petitioner contends that a jailhouse informant violated his right to counsel during an interrogation.   (Id. ¶ 17.)   Petitioner had to raise these issues in pro se papers to the Appellate Division, papers he characterized as from a novice (Docket No. 8, Pet'r Memo. at fourth unnumbered page).   Petitioner seeks to prove his actual innocence through affidavits of Kirkland and others exonerating the petitioner (Docket No. 1, Pet. ¶ 15, Exs. A-E) and his efforts to seek genetic testing on the shell casings from the shotgun (id. ¶ 18).   He later argues that the denial of this testing violates his due process rights (Docket No. 8, Pet'r Memo. at twelfth unnumbered page), see McKithin v. Brown, 626 F.3d 143 (2d Cir. 2010).

The Appellate Division, Fourth Department, held that petitioner failed to preserve for appellate review his prosecutorial misconduct (opening statement and improper cross-examination errors) and sufficiency of evidence contentions, Simon, supra, 71 A.D.3d at 1575, 897 N.Y.S.2d at 579.   The court then held that the County Court did not abuse its discretion in denying petitioner's request for a missing witness charge because the two putative witnesses invoked (or probably would have invoked) their Fifth Amendment rights against self-incrimination, id., 71 A.D.3d at 1575, 897 N.Y.S.2d at 579-80.   The court upheld the introduction of the autopsy photograph and two photographs of the crime scene, id., 71 A.D.3d at 1575, 897 N.Y.S.2d at 580.   The court then found that petitioner received meaningful representation by trial counsel, id., 71 A.D.3d at 1576,

6

897 N.Y.S.2d at 580, concluding that, while defense counsel for sentencing improperly assumed positions adverse to petitioner on two contentions, the County Court was not influenced by counsel in denying petitioner relief, id., 71 A.D.3d at 1576, 897 N.Y.S.2d at 580.   The court upheld the denial of petitioner's CPL 30.30(3) motion on newly discovered evidence.

Respondent filed an Answer with attached record from the state court proceedings (Docket Nos. 6, 7).   There, respondent argues that petitioner received effective assistance of counsel at all stages of this prosecution, that no judicial bias was shown against petitioner here, the allegation of new proof of petitioner's actual innocence is not grounds for habeas relief, and his confession was not the product of coercion (Docket No. 7, Resp't Memo. at 10-12, 13, 14, 15, 16).   Respondent contends that trial counsel was competent and diligent overall, hence the first prong of Strickland v. Washington was not met (id. at 12).   As for appellate counsel, respondent argues that petitioner has not shown that but for the omitted arguments, the appeal would have been decided differently (id. at 13).

As for petitioner's contention of judicial bias, respondent argues that he failed to show that he was denied the right to be tried by an unbiased and impartial judge, see Ungar v. Sarafite, 376 U.S. 575, 584 (1964) (id. at 14).   To respondent, petitioner's bare assertion of bias was insufficient (id.).

As for petitioner's claims of actual innocence and procedural errors arising from the newly discovered evidence of that innocence, respondent responds that this so-called new proof was not a ground for habeas relief absent an allegation of a constitutional violation (id. at 15), see Townsend v. Sain, 372 U.S. 293, 317 (1963); Herrara v. Collins, 506 U.S. 390, 400 (1993).

Respondent next argues that petitioner's argument that his statements were coerced lacked merit (id. at 16).   Respondent argues that petitioner's trial was fair, despite the trial errors petitioner raises in this proceeding (id. at 17-19).   Some of these objections (such as the prosecution's opening statement regarding the victim or improper prosecution cross-examination of an alibi witness) were not preserved for review (id. at 17-18, 19).   As for failing to give the missing witness charge, respondent points out that one witness objected to, Moet Madison, had her testimony stricken from the record and the jury was instructed to disregard references to her (id. at 18; Trial Tr. at 1339 (charging conference), 1061-65 (Madison's testimony, outside the presence of the jury, asserting her Fifth Amendment privilege), 1481 (jury charge)).   As to the other witness, Kirkland, the County Court noted that he sought to withdraw his plea when he was being sentenced (Docket No. 7, Resp't Memo. at 18; Trial Tr. at 1338-39, 1331-32, 1336-37).   Respondent concludes that "neither, then, could Kirkland have been expected to provide favorable testimony" (Docket No. 7, Resp't Memo. at 18).   During the charging conference, the prosecution argued that Kirkland would not testify favorably for the People, hence the missing witness charge was not appropriate (Trial Tr. at 1337-38) and the County Court held that Kirkland was not within the People's control and denied the charge (id. at 1338-39).

As for the informant, respondent argues that there was no evidence that Orlando Tate (the informer) was acting as an agent of law enforcement as to his questioning of petitioner be deemed interrogation (Docket No. 7, Resp't Memo. at 19).   Respondent did not address the failure to test the shell casings for genetic material.

**DISCUSSION**

I.      Exhaustion

In the interest of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts.   See Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996), citing Picard v. Connor, 404 U.S. 270, 275 (1971); Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (in banc), cert. denied, 464 U.S. 1048 (1984).   A state prisoner seeking federal habeas corpus review of his conviction must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition.   Rose v. Lundy, 455 U.S. 509 (1982).   However, under 28 U.S.C. § 2254(b)(2), where appropriate the Court may deny the relief requested in the petition upon a review of the merits notwithstanding the failure of the applicant to exhaust state court remedies.

Based on the record before the Court, it appears that the petitioner has exhausted his state court remedies.   In any event, review of the claims asserted in the Petition is appropriate under § 2254(b)(2).

II.     Standard of Review

State court findings of "historical" facts, and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986). (See also 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct.")

As amended by the Antiterrorism and Effective Death Penalty Act of 1996, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"),

28 U.S.C. § 2254(d) provides that a habeas corpus Petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law,
        as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented
        in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.   The presumption of correctness attaches to findings both by state trial courts and by state appellate courts.   Smith v. Sullivan, 1 F. Supp. 2d 206, 210-11 (W.D.N.Y. 1998) (Larimer, Ch.J.); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert. denied, 490 U.S. 1059 (1989).   As noted by then-Chief Judge Larimer in Smith, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way."   Smith, supra, 1 F. Supp. 2d at 211.

Prior to the enactment of the AEDPA, § 2254(d) provided that a state court "determination after a hearing on the merits of a factual issue . . . shall be presumed to be correct," unless certain specified exceptions existed.   When it enacted AEDPA, Congress changed the language dealing with the presumption of correctness of state court findings of fact and moved it to § 2254(e), and also added the current version of § 2254(d).   The amended statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'"   Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir.1997) (quoting Emerson v.

Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir.1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion").

Initially, it should be noted that the petitioner has failed to preserve these arguments for habeas corpus review.   Federal habeas review is barred when a state court expressly relied on a procedural default as an independent and adequate state ground.   See Harris v. Reed, 489 U.S. 255 (1989); Wainwright v. Sykes, 433 U.S. 72 (1977).   "A federal court is generally precluded from reviewing any claim included within the habeas petition for which a 'state court rests its judgment on an adequate and independent state ground, including a state procedural bar,'" Bacchi v. Senkowski, 884 F. Supp. 724, 730 (E.D.N.Y.1995) (quoting Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992) (per curiam)).   A state procedural bar arises through a failure to make a timely appeal, or through a failure to preserve a claim on appeal through contemporaneous objection. Reid, supra, 961 F.2d at 377.   Failure to comply with a state's contemporaneous objection rule bars subsequent federal habeas corpus review unless petitioner is able to demonstrate both cause for the procedural default and actual prejudice attributable thereto.   Wainwright, supra, 433 U.S. at 81-91 (1977); Washington v. LeFerve, 637 F. Supp. 1175, 1177 (E.D.N.Y.1986).   "In order to demonstrate cause for his procedural fault, petitioner would have to show that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"   Washington, supra, 637 F. Supp. at 1177 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).   These principles have been applied even where a defendant represents himself at trial. Reed v. Farley, 512 U.S. 339 (1994); Wells v. LeFavre, 1996 WL 692003 (S.D.N.Y. 1996).

Here, several of the grounds now raised in this Petition are barred by procedural bar.   The Fourth Department's decision was almost exclusively based upon aspects of state law rather than the federal constitution.

III.     Application

    A.     Actual Innocence

Petitioner's proof of his actual innocence comes from newly discovered evidence, namely statement of Kirkland's recanting his plea statements that implicated petitioner and the statements of others of Kirkland's recantation.

The rule that allegations of newly discovered evidence by themselves do not state a ground for habeas corpus relief is based upon the principle "that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact," Herrera, supra, 506 U.S. at 400 (citing, e.g., Moore v. Dempsey, 261 U.S. 86, 87-88 (1923) (Holmes, J.)).   As noted over a century ago, a habeas Court "will not weight the evidence," Hyde v. Shine, 199 U.S. 62, 84 (1905); see Herrera, supra, 506 U.S. at 401; see also Barefoot v. Estelle, 463 U.S. 880, 887 (1983) (federal court is not forum "in which to relitigate state trials").   Actual innocence without an allegation of constitutional error does not provide a basis for habeas relief, Townsend, supra, 372 U.S. at 317.

The key evidence against petitioner is his confession statement, Kirkland's testimony, and the presence of defendant's genetic material on the shotgun shell casings.   But petitioner has not shown the constitutional error in the state courts not considering the recanting affidavit and the related affidavits that he calls newly discovered evidence.   Petitioner sought DNA testing of the shell casing (Docket No. 1, Pet. ¶ 18).   Petitioner alleged that the shell casings were not his and

that would be proven by the results of DNA testing (Docket No. 8, Pet'r Memo. at twelfth

unnumbered page, citing McKithin, supra, 626 F.3d at 151-55).   Petitioner reliance on McKithin

is misplaced since the Circuit Court held that the plaintiff there was not entitled to have DNA

testing of evidence for post-conviction relief,   supra, 626 F.3d 143.   The Second Circuit in the

civil rights action McKithin cited by petitioner (id.) reversed the district court ordering access to

plaintiff of evidence for DNA testing, based on the Supreme Court decision in District Attorney's

Office for the Third Judicial District v. Osborne, 557 U.S. 52 (2009), holding that a party has no

procedural due process right to receive evidence for post-conviction DNA testing, McKithin,

supra, 626 F.3d at 150-51.

Therefore, petitioner's argument for habeas relief on this ground is **denied**.

B.      Ineffective Assistance of Counsel

Petitioner next raises numerous instances of ineffectiveness by trial, sentencing and

appellate counsel.   The Court held, in Strickland v. Washington, 466 U.S. 668 (1984), that for a

petitioner to prevail on any claim of ineffective assistance of counsel, he must satisfy a two-part

test that:   1) counsel's representation fell below an objective standard of reasonableness; and 2) a

showing of prejudice by the reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different, id. at 687-88, 694; see also Forbes v.

United States, 574 F.3d 101, 106 (2d Cir. 2990) (per curiam) (appellate counsel); Ramchair v.

Conway, 601 F.3d 66, 73 (2d Cir. 2010) (same).

1.      Trial Counsel

The Fourth Department held that petitioner received meaningful representation by counsel,

Simon, supra, 71 A.D.3d at 1576, 897 N.Y.S.2d at 580.   Upon this Court's review of the state trial

record, petitioner received effective representation during the course of this trial.   His habeas

Petition on this ground is **denied**.

        2.      Sentencing Counsel

Sentencing counsel did argue a position adverse to the one petitioner was taking (stating

that petitioner's pro se motions to disqualify the trial judge and for ineffective assistance of trial

counsel upon disagreements with trial strategy were baseless), but the Fourth Department held that

the County Court was not influenced by counsel's contrary arguments in denying petitioner's

motion, 71 A.D.3d at 1576, 897 N.Y.S.2d at 580.   Since petitioner was not prejudiced by the

positions taken by sentencing counsel in opposing the pro se arguments he raised in his post-trial

motion and since the trial court rejected those arguments on their merits, petitioner has not met the

second prong of prejudice for an ineffective assistance of counsel claim with this attorney.   The

Petition on this ground also is **denied**.

        3.      Appellate Counsel

Finally, petitioner contends that appellate counsel was ineffective in not raising certain

claims, which he had to raise (ineffectively he believes) pro se.   To establish ineffective

assistance of appellate counsel petitioner "must show that 'counsel's representation fell below an

objective standard of reasonableness,' and that 'there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different,'" Forbes,

supra, 574 F.3d at 106 (quoting Strickland, supra, 466 U.S. at 688, 694).

> "In attempting to demonstrate that appellate counsel's failure to raise a state claim
> constitutes deficient performance, it is not sufficient for the habeas petitioner to
> show merely that counsel omitted a nonfrivolous argument, for counsel does not
> have to advance every nonfrivolous argument that could be made.   However, a
> petitioner may establish constitutionally inadequate performance if he shows that

counsel omitted significant and obvious issues while pursuing issues that were
clearly and significantly weaker."

Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (internal citation omitted); Ramchair, supra,

601 F.3d at 73.

The issues petitioner here contends should have been raised by counsel (and not by him pro

se) were not significant or obvious issues and those raised by appellate counsel were not

significantly weaker than the ones petitioner sought to be raised.   These arguments mostly

involve his contention of actual innocence (from Kirkland's recanting affidavit and the People's

failure to call Kirkland and Madison as witnesses) and voir dire misconduct.   Kirkland and

Monroe's roles in this case will be discussed below regarding the missing witness charge.

C.    Trial Errors

Petitioner next argues that various trial errors require habeas relief since cumulatively

these errors deprived him of due process.   Respondent contends that petitioner received a fair trial

(Docket No. 7, Resp't Memo. at 17-19).   Many of the errors were not preserved for review.

1.    Legal Sufficiency of Evidence

The Appellate Division held that petitioner did not preserve this contention, Simon, supra,

71 A.D.3d at 1575, 897 N.Y.S.2d at 579.   Thus, this claim **is barred** from habeas review (see

Docket No. 7, Resp't Memo. at 17, 19).

2.    Missing Witness Charge

One error petitioner raises is the denial of his request for a missing witness charge for

Kirkland and Madison.   The Fourth Department held here that the missing witness charge was

unnecessary since the named witnesses had (Madison) or would (Kirkland) invoke their Fifth

Amendment right against self-incrimination and would not testify, <u>Simon</u>, <u>supra</u>, 71 A.D.3d 1575, 897 N.Y.S.2d at 579-80 (<u>see also</u> Trial Tr. at 1062-64), finding that Kirkland would not provide testimony in favor of the prosecution, <u>id.</u>, 71 A.D.3d at 1575, 897 N.Y.S.2d at 589.

As for the introduction of Madison's statement (<u>see also</u> Docket No. 8, Pet'r Memo. at seventh unnumbered page), the County Court later struck this testimony (Trial Tr. at 1339, 1481) and petitioner has not shown that hearing this testimony somehow still prejudiced him.   That exclusion suffices rather than a missing witness charge.

As for Kirkland, and generally to obtain a missing witness charge, petitioner would have to show that the witness would testify favorably to the opposing party (here, the People) and that the prosecution failed to call that witness to testify, <u>People v. Gonzalez</u>, 68 N.Y.2d 424, 427, 509 N.Y.S.2d 796, 799 (1986).   The People can rebut this by arguing (pertinent to this proceeding) that the witness was not available or under the People's "control," with "control" defined to be the relationship of the witness to the parties and whether the witness's testimony would be favorable to either side, <u>id.</u>, 68 N.Y.2d at 428, 429, 509 N.Y.S.2d at 799, 800.   The state court finding as to the People's control of a witness is a factual determination that under habeas review must be rebutted by clear and convincing evidence, <u>Moore v. Herbert</u>, No. 9:02-CV-0999, 2005 U.S. Dist. LEXIS 3897, at *19 (N.D.N.Y. Dec. 30, 2005).   Giving the missing witness charge is within the discretion of the trial court, <u>e.g.</u>, <u>Reid v. Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992).

Petitioner has not produced clear and convincing evidence to rebut the state court finding that Kirkland was not within the prosecution's control.   Thus, petitioner is **denied** relief on this contention.

16

3.    Prosecutorial Misconduct

Petitioner complains that the prosecution improperly cross-examined an alibi witness and made inflammatory statements describing the victim in his opening statement.   The Appellate Division held that these contentions were not preserved for appellate review, Simon, supra, 71 A.D.3d at 1575, 897 N.Y.S.2d at 579.   As such, these were not preserved for habeas review, see Montalvo v. Annetts, No. 02 Civ. 1056, 2003 WL 22962504, at *19-21 (S.D.N.Y. Dec. 17, 2003) (see Docket No. 7, Resp't Memo. at 17), and the Petition **is denied** as to this claim.

4.    Use of Photographs of Crime Scene and Victim's Wounds

Petitioner next objects to the introduction of photographs of victim's gunshot wounds and the crime scene because the photographs were prejudicial and not probative.   The Appellate Division held that the County Court did not abuse its discretion in admitted these photographs into evidence, since the autopsy photograph was relevant to illustrate and corroborate the medical examiner's testimony and the crime scene photographs were relevant to depict the scene that was testified to by other witnesses, Simon, supra, 71 A.D.3d at 1575-76, 897 N.Y.S.2d at 580.

As noted by another district court, "while a 'prosecutor should not use arguments calculated to inflame the passions of prejudices of the jury,' it is 'impossible to expect that the criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion,'" Ogletree v. Zon, 559 F. Supp. 2d 250, 259 (N.D.N.Y 2007) (quoting United States v. Young, 470 U.S. 1, 8 (1985), quoting in turn ABA Standards for Criminal Justice 3-4.8 (2d ed. 1980) and United States v. Wexler, 79 F.2d 526, 529-30 (2d Cir. 1935)).   Under New York law, trial judges have broad discretion to admit photographs, McCullough v. Filion, 378 F. Supp. 2d 241, 254 (W.D.N.Y. 2005) (Bianchini, Mag.

17

J.).   Viewing these pictures was not erroneous as a matter of state evidentiary law and application

of this state procedure did not violate federal constitutional principles.   The Appellate Division's

rejection of this claim, as was found in <u>McCullough</u> for a similarly rejected claim, was not contrary

to nor an unreasonable application of clearly established federal law, <u>id.</u> at 254-55; <u>see also</u> <u>Sides</u>

<u>v. Sendkowski</u>, 281 F. Supp. 2d 649, 654-55 (W.D.N.Y. 2003) (Larimer, J.).   Petitioner's

contention here is **denied**.

> 5.     Jail House Informant as Inquisitor

Next, petitioner claims that a jail house informant, Orlando Tate, in effect interrogated him

without advising him of his <u>Miranda</u>[1] rights (or that the inmate was an informant).   Petitioner

characterizes Tate as a "career jail house informer" (Docket No. 8, Pet'r Memo. at ninth to tenth

unnumbered pages).   Use of an informant to deliberately elicit incriminating statements from a

defendant interferes with that defendant's Sixth Amendment rights to counsel under <u>Massiah v.</u>

<u>United States</u>, 377 U.S. 201 (1964), <u>see</u> <u>United States v. Henry</u>, 447 U.S. 264 (1980); <u>Wilson v.</u>

<u>Henderson</u>, 742 F.2d 741, 744 (2d Cir. 1984).   The <u>Henry</u> Court viewed three factors in making

this determination, that the informant was paid; that ostensibly he was no more than a fellow

inmate of the defendant, and that the defendant was in custody and under indictment at the time he

talked with the inmate informant, <u>Henry</u>, <u>supra</u>, 447 U.S. at 270; <u>Wilson</u>, <u>supra</u>, 742 F.2d at 744,

with the informant's conduct attributed to the government based upon the government's awareness

that the informant was near the defendant and would be able to converse with him without

arousing suspicion, <u>Henry</u>, <u>supra</u>, 447 U.S. at 270; <u>Wilson</u>, <u>supra</u>, 742 F.2d at 744.   "By

intentionally creating a situation likely to induce [defendant] Henry to make incriminating

---

[1]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

statements without the assistance of counsel, the Government violated Henry's Sixth Amendment right to counsel," Henry, supra, 447 U.S. at 274; see Wilson, supra, 742 F.2d at 744.

Applying the Henry factors, respondent denies that Tate surreptitiously acted as a government agent while no more than a fellow inmate with petitioner (Docket No. 7, Resp't Memo. at 19).   Petitioner made inculpatory statements to Tate.   The third Henry factor differs from Henry (or Wilson, supra, 742 F.2d at 745); here, it is not clear that the government induced petitioner to make statements to Tate.

Here, Tate testified that, on May 22, 2007, he met petitioner in the court hold area (or "bullpen") awaiting court appearances in Buffalo City Court (Trial Tr. at 991).   Petitioner then told Tate that he was in City Court for murder of a deli owner with codefendant Wesley Kirkland (id. at 992-93).   Eight days later, Tate met with the prosecution and discussed what petitioner had told him (id. at 996-98, 999-1000).   Tate testified that he had not met with the police before May 22, 2007 regarding Nasser's murder (id. at 998).   Tate later was instructed not to talk with petitioner but to have petitioner freely give Tate information (id. at 1000).

From this record, it is clear that Tate was not a government agent when he first encountered petitioner and the prosecution did not create a situation for petitioner to be induced to talk.   Tate's subsequent conversation with petitioner sometime in July 2007 was one when Tate was acting as a government agent, but Tate had been instructed not to initiate conversation with petitioner but have petitioner make statements of his own accord.   Thus, under the Henry factors, Tate was not acting as a government inquisitor and petitioner's Sixth Amendment rights were not violated. The Petition also is **denied** on this ground.

19

IV.    Other Grounds Raised

Petitioner also argues that the County Court was biased against him, based upon Kirkland's plea (Docket No. 1, Pet. ¶ 14; Docket No. 8, Pet'r Memo. at tenth-eleventh unnumbered pages). Respondent replies that to prevail on a judicial bias claim petitioner needed to show that the judge had a direct personal interest in the outcome of the hearing, see Ungar v. Sarafite, 376 U.S. 575, 584 (1964) (Docket No. 7, Resp't Memo. at 14).   Petitioner here has not shown bias by the County Court.   Petitioner's relief on this ground is **denied**.

V.    Summary

For the reasons stated above, petitioner's Petition (Docket No. 1) for habeas relief is **denied**.

VI.    Certificate of Appealability

An appeal from a final order in a habeas corpus proceeding involving process issued by a state court requires a certificate of appealability before an appeal can be taken.   28 U.S.C. § 2253(c)(1)(A).   Under that statute "a certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right."   Id. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322 (2003).   As discussed above, the claims raised by petitioner here do not make a substantial showing of the denial of a constitutional right. There is an adequate independent state law ground that bars federal habeas review.   Thus, the Court **declines** to issue a certificate of appealability.

**CONCLUSION**

Based on the above, the Petition (Docket No. 1) is **DENIED**.   The Court **declines** to issue a certificate of appealability; pursuant to Fed. R. App. P. 22(b)(1), petitioner may request a circuit judge of the United States Court of Appeals for the Second Circuit to issue the certificate.

So Ordered.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
            April 28, 2014